**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE**

GORDON JEWISH COMMUNITY CENTER,

      Plaintiff

v.                                             **3:25-cv-1438**

GOYIM DEFENSE LEAGUE, et al.,          JURY DEMAND

                                                  Judge Trauger

      Defendants

---

**JON MINADEO AND GOYIM DEFENSE LEAGUE'S
REPLY IN SUPPORT OF MOTION TO DISMISS**

---

## I.    Failure to State a Claim

For the most part, the Plaintiff seems to acknowledge that Jon Minadeo, and his "Goyim Defense League," did not actually conspire against the Plaintiff specifically. For example, on pages 9-10 of its Response, the Gordon Jewish Community Center seems to acknowledge that Minadeo did not even *know* about the plans to trespass — until after the events occurred. Instead of any conspiracy to trespass or defraud, now it has just claimed that the Defendants conspired, more generally, to "harass, intimidate, and menace" Jews. (RE 25, Response, p. 9). The problem with this argument is that a civil conspiracy must include an actual agreement to *violate the law*, and this broad allegation goes well beyond such idea.

In the present context, violating the law would mean (1) Blocking the Gordon Jewish Community Center from enjoying real property, (2) Blocking the Community Center from accessing public accomodations, (3) Trespassing at the Community

Center, and/or (4) Committing fraud against the Community Center. But at this point, it seems almost undisputed that Minadeo and his "League" never really agreed to do these things.

Instead, the Community Center has suggested that Minadeo may incur liability for conspiring against a broader group — i.e., not just the Community Center. Notably, the Sixth Circuit has held that the conspirators must agree at least on some "general conspiratorial objective," *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985), and the Community Center takes this to mean that any conspiracy to harm Jewish properties in general will suffice. (RE 25, Response, p. 9). Nonetheless, even if so, the biggest problem with the Plaintiff's argument is that the Complaint never actually claims a conspiracy even that specific.

Instead, the charged conspiracy is broader, encompassing objectives that are not even torts. Rather than conspiring to break the aforementioned laws — whether against this Plaintiff, or even against all other plaintiffs — supposedly Minadeo and his League just conspired to "harass, intimidate, and menace" Jews in general.[1] To be clear, the Complaint even references Jews in Knoxville, not just Nashville. (*See* RE 1, Complaint ¶ 146). But no matter how limited or broad the jurisdiction, the main problem with this legal theory is that harassing people isn't necessarily illegal. Notably, Tennessee does have a criminal statute called "Harassment." Tenn. Code Ann. § 39-17-308. But nothing in the Complaint seems to link that statute's

---

[1] The Complaint also says that Minadeo conspired to engage in "violence," whenever he could do so without being arrested. (RE 1, Complaint, ¶¶ 62-63). However, even if we take this unsubstantiated allegation as true, no one did any violence at the Community Center.

elements to the allegations here. In any event, a civil conspiracy would seem to require an agreement to commit a *tort*, not just a misdemeanor, and there is simply no tort in Tennessee (or the Sixth Circuit) called harassment, intimidation, or menacing. Worse yet, the Complaint even seems to label, as acts of harassment, relatively benign or constitutionally-protected acts — such as distributing flyers, (RE 1, at ¶ 146), or marching in the streets to spread a political message. (RE 1, at ¶ 82). Doubtless, some people will always feel 'harassed' by having to endure exposure to offensive views. Nonetheless, such feeling hardly makes the acts illegal. *See, e.g., Coates v. City of Cincinnati*, 402 U.S. 611 (1971). Without any agreement to violate any actual law, there is simply no tortious conspiracy.

## II.     Personal Jurisdiction

Again, the debate over personal jurisdiction becomes quite similar — since, again, the Communit]y Center has focused on the Name the Nose Tour "conspiracy" as grounds for jurisdictional contact. Basically, if we deem the march in July 2024 to be part of the same "conspiracy" as the trespass(es) in January 2025, then it would signify that Minadeo formed the whole conspiracy *while* in Tennessee, thereby making it easier to say that he availed himself of state jurisdiction. (RE 25, Response, p. 17-18) (Making this point). Again, though, the problem with the argument is that the two plans are quite different. A 'conspiracy' to preach an offensive message — and maybe even to get into some arguments or fights while doing it — is simply a different animal from a conspiracy to trespass at one or more

Jewish community centers. Not only were the two plans entirely different in substance, but also the events were many months apart.

As the Plaintiff has already noted, when considering minimum contacts, the relevance and connection between the contacts and the tort itself is a key factor. In other words, "the claims must arise out of or relate to the defendant's contacts with the forum." *Stanley v. Nissan N. Am., Inc.*, 719 F. Supp. 3d 786, 815 (M.D. Tenn. 2024). Hence, once we accurately *distinguish* the Name the Nose Tour, which *didn't* result in intrusions against Jewish businesses, from Travis Garland's later scheme in 2025, which *did*, the relation factor strongly weighs against any personal jurisdiction. Sure, Minadeo came to Nashville once. But while here, he didn't do — or even conspire to do — the torts charged.

Otherwise, the Community Center also argues that Minadeo, and his League, have sufficient contacts just because they later used the publicity from the Nashville Tour to solicit donations online. (RE 25, Response, p. 16). This argument should fail. Even if Minadeo did such thing, still it hardly counts as doing business in Tennessee. According to the Supreme Court, the proper test is whether a defendant has made an effort to serve the "market" of the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Moreover, even for actual sales, a single "isolated" transaction typically doesn't suffice. *Id.* Here, no one provides any affidavit showing that Minadeo sold *anything* to Tennesseans at all, isolated or otherwise. On page 16 of the Response, the Community Center does still say that he has sold merchandise here. But Minadeo already filed a declaration

disputing that he has sold anything personally, and even disputing that the Goyim Defense League exists at all. Therefore, that allegation should fail.[2] Instead, Minadeo just made a single, isolated trip here to preach his doctrines. Such activity did not purposely avail himself of state jurisdiction over his (supposed) later conspiracy to trespass in the Community Center the following year.

## CONCLUSION

Jon Minadeo and the "Goyim Defense League" ask that the Complaint be dismissed against them, for failure to state a claim and lack of personal jurisdiction.

Respectfully submitted,

/s/ Drew Justice
Drew Justice #29247
Attorney for Jon Minadeo and Goyim
  Defense League
1902 Cypress Drive
Murfreesboro, TN 37130
(615) 419-4994
drew@justicelawoffice.com

### Certificate of Service

The undersigned lawyer certifies that this February 27, 2025, he has delivered this motion by ECF to Ben Raybin, 424 Church Street, Suite 2120, Nashville, TN 37219 <benraybin@nashvilletnlaw.com>; and Olin Baker, P.O. Box 250, Charlotte, TN 37036 <obaker@bakerlawgrp.com>. Notably, Travis Garland seems to have been released from prison/jail, and counsel doesn't know where he is.

/s/ Drew Justice
Drew Justice #29247

---

2 The Defendants agree with the Plaintiff that, ordinarily, the defense of incapacity to be sued relates to failure to state a claim. However, it is raised here because it also seems relevant to minimum contacts, especially given the allegations about GDL merchandising in Tennessee.